

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No.:09CR20222-1 |
| ) | |
| Respondent, ) | **MOTION TO AMEND THE JUDGMENT** |
| ) | |
| vs. ) | |
| ) | F I L E D |
| MICHELLE A. ANDREWS, ) | |
| ) | AUG 1 8 2011 |
| Petitioner. ) | |
| | CLERK'S OFFICE |
| | DETROIT |

COMES NOW, MICHELLE A. ANDREWS, hereinafter referred to as Petitioner, acting in prose status in the above styled and entitled cause of action who respectfully moves this Honorable Court to Amend The Judgment imposed August 30 2010.

In support of this Motion Petitioner submits to the court the following;

Petitioner was convicted pursuant to plea of guilty to violation of Title 18 USC 1344, Bank Fraud. The court imposed sentence August 30, 2010, to a term of twenty-one months in custody of the Bureau of Prisons.

As part of the judgment, pursuant to the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A.the court imposed the following restitution in the amount of $166,608.57 joint and several with co-defendants. The Judgment and Probation/Commitment Order entered by the district court required that Lemoine pay restitution during his imprisonment pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program. (See Exhibit "A" copy of page 7 of Judgment and Commitment).

The Judgment reflects in relevant part that court expresses that intent that Andrews to participate in the FRP Program, and that the court "is aware of the requirements of the program it approves of the schedule. However at that time no payment schedule was set.

Appellate Court decisions rest on a view that a silent judgment "delegates" judicial authority to the Bureau of Prisons, but this responsibility is misplaced. 18 U.S.C. § 3664(f)(2) requires the district judges to set a schedule of payments.  See United States v. Day, 418 F.3d 746, 751-57 (7th Cir.2005). The mandate to the MVRA is clear: "the sentencing court 'shall . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid . ' " (citing 18 U.S.C. § 3664(f)(2)).

Petitioner submits that the responsibility lies with the District Court to specify how much she must pay each month of her 21 months in prison. To require some payment, while leaving the amount open, is to delegate a judicial task to the Bureau of Prisons. United States v. Davis, 306 F.3d 398 (6th Cir.2002);Also; US v Gunning I, 339 F.3d at 949;  see also 18 U.S.C. § 3664(f)(1)(B)(2) ("Upon determination of the amount of restitution owed to each victim, the court shall . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid .").

Petitioner is requesting that the District Court amend the Judgment and Commitment to reflect a payment schedule on the restitution payable through the Financial Responsibility Program.

Several decisions in this circuit hold that omissions of any schedule at all meets the requirements of "plain error" under Fed.R.Crim.P. 52(b).  See, e.g., United States v. Thigpen, 456 F.3d 766, 771 (7th Cir.2006); United States v. Mohammad, 53 F.3d 1426, 1438-39 (7th Cir.1995); see also Pandiello, 184 F.3d at 688.  See 18 U.S.C. § 3664(k) and § 3583(e)(2) (schedules may be set or changed at any time in light of the convict's current resources). See 18 U.S.C. § 3664(k) and § 3583(e)(2) (schedules may be set or changed at any time in light of the convict's current resources).

Petitioner' s Institution work assignment is Recreation. Her pay from this assignment is $5.25 per month. In addition she receives a small stipends from her mother who is on a fixed income. With the amount she received she can communicate with her family through e mail  or phone and purchase necessities from commissary. This is what the amounts allow her to do, no more. In order to increase any amount of funds she from outside comply with the  present payment schedule as set by the staff at Federal

- 2

Prison Camp, Alderson would cause hardship on Andrews, her mother and anyone else who may be inclined to assist financially on ocassion...

Petitioner has limited resources. She may have had some funds contributed by friends and family to allow her to purchase necessities upon her arrival at Federal Prison Camp Alderson. At the time of inception new arrivals are not allowed to bring anything in, and that includes shoes, or even underwear everything has to be purchased from the prison commissary Not all necessities are provided. If the current FRP payment is based on the amount Andrews brought in, and any monies sent by friends and families in the interim, it is erroneously determined with the presumption that these would be the amounts of funds Andrews would receive consistently. This is not the case. This amount was a onetime occurrence once, saved and donated for the specific purpose of allowing her to meet the needs she would have upon entering prison. Presently Petitioner's FRP payment schedule is set at 138.00 per month which is onerous and impossible for her to meet without imposing a hardship on someone outside the institution. .

§ 3663(f)(1) is construed to permit a court to modify a payment schedule as warranted by changed circumstances, a defendant who encounters unanticipated financial setbacks may be burdened with an unreasonable schedule."

With respect to the fact that a later statute, the Mandatory Victims Restitution Act, 18 U.S.C. § 3663 (1996), includes an explicit authorization for a district court to amend a payment schedule if a defendant experiences a material change in his economic circumstance (thus making clear that Congress knew how to give a district court the authority if it chose to),*United States v. Mortimer*, 94 F.3d 89 (2d Cir. 1996).

The consequences if Petitioner misses the schedule are great. (See Exhibit "B" out lining consequences of "refusing to participate in the Inmate Financial responsibility Program. Refusal is interpreted by not having the funds available in the commissary by a specific time as deemed by unit staff.

Petitioner contends that the court establishing a set amount of restitution schedule payable through the Financial Responsibility Program only changes the application of equity and not the amount of restitution.

WHEREFORE PREMISES CONSIDERED, Petitioner is requesting that the court;

    (a) set the amount of the payment,

    (b) set the amount of payment at the minimum amount allowable,

    (c) and Grant unto the Petitioner any other relief the court deems just and proper.

Respectfully Submitted,

Dated this    day of August, 2011

*Michelle Andrews*

Michelle A. Andrews, Petitioner, pro se

Fed. Reg. No: ~~41245~~-039   17114-039

FPC Alderson
Federal Prison Camp
Glen Ray Road Box A
Alderson, West VA. 24910

- 4

DEFENDANT: MICHELLE ANTOINETTE ANDREWS
CASE NUMBER: 09CR20222-1

Exhibit "A4"

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:
Unless the court has expressly ordered otherwise in the special instructions above, while in custody, the defendant shall participate in the Inmate Financial Responsibility Program. The Court is aware of the requirements of the program and approves of the payment schedule of this program and hereby orders the defendant's compliance. All criminal monetary penalty payments are to be made to the Clerk of the Court, except those payments made through the Bureau of Prison's Inmate Financial Responsibility Program.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| 09-20222-02,03<br>Co-defendants in this case | $166,608.57 | $166,608.57 | |

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement



OPI: CPD/CPB
NUMBER: P5380.08
DATE: 8/15/2005
SUBJECT: Financial Responsibility Program, Inmate

**RULES EFFECTIVE:** 1/27/2000

1. [**PURPOSE AND SCOPE** §545.10. The Bureau of Prisons encourages each sentenced inmate to meet his or her legitimate financial obligations. As part of the initial classification process, staff will assist the inmate in developing a financial plan for meeting those obligations, and at subsequent program reviews, staff shall consider the inmate's efforts to fulfill those obligations as indicative of that individual's acceptance and demonstrated level of responsibility. The provisions of this rule apply to all inmates in federal facilities, except: Study and observation cases, pretrial detainees, and inmates in holdover status pending designation.]

The Victim and Witness Protection Act of 1982, the Victims of Crime Act of 1984, the Comprehensive Crime Control Act of 1984, and the Federal Debt Collection Procedures Act of 1990 require a diligent effort on the part of all law enforcement agencies to collect court-ordered financial obligations.

2. **SUMMARY OF CHANGES.** Significant changes in this revision include:

   ! Provides instruction for documenting an inmate's Inmate Financial Responsibility Program (IFRP) participation and progress at times other than regularly scheduled Program Reviews;

   ! Implements quality reviews by region and institution staff; and

   ! Replaces the word "contract" with financial plan.

> ! the balance owed on the obligation(s),
> ! the current financial plan,
> ! the total amount deposited into the inmate's trust fund account for the previous six months, and
> ! whether the financial plan is being increased, decreased, or will continue at the same rate.

Each month, the IFRP Coordinator will review the IFRP SENTRY Module Transaction PIEA (Display or Print Expected Versus Actual Withdrawal Amount) transaction after the withdrawals have been completed. This transaction allows the user to display or print a list of inmates who paid less than the amount specified in the inmate's financial plan.

- ◆ The Unit Team may also use this information to determine if an inmate needs to be placed in "Refuse" status or if the inmate needs to be counseled.

The IFRP Coordinator will forward a copy of this transaction to each Unit Manager, who will ensure appropriate action is taken regarding inmates whose actual payments where less than expected.

When preparing a progress report, a statement as to what progress the inmate made during his/her incarceration on court ordered obligations must be included. Unit staff may make positive comments regarding the inmate's FRP participation.



[d. **Effects of Non-participation**. Refusal by an inmate to participate in the financial responsibility program or to comply with the provisions of his financial plan ordinarily shall result in the following:

(1) **Where applicable, the Parole Commission will be notified of the inmate's failure to participate;**

(2) **The inmate will not receive any furlough (other than possibly an emergency or medical furlough);**]

This restriction does not apply to inmates requiring medical furloughs and inmates with "OUT" or "COM" custody who are transferring from one institution to a minimum security level institution via an unescorted transfer.

**[(3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;]**

The Unit Team is to consider institution needs, particularly for skilled workers. Such needs may require that an inmate with a financial obligation be assigned to a lower paying, non-UNICOR work assignment. The Unit Team considers this when developing the inmate's financial plan. An inmate working above the maintenance pay level who fails to make satisfactory progress on his or her payment plan is to be reduced to maintenance pay.

**[(4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility;]**

Additionally, inmates will not be permitted to participate in activities outside the secure perimeter, such as speaking engagements.

**[(5) The inmate will not be placed in UNICOR. Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months. Any exceptions to this require approval of the Warden;]**

The Unit Team may recommend an inmate for priority placement in UNICOR to assist in paying a significant financial obligation. Ordinarily, an inmate will not be recommended for priority placement unless he or she has obligations totaling at least $1,000 and limited outside resources.

**[(6) The inmate shall be subject to a monthly commissary spending limitation more stringent than the monthly commissary spending limitation set for all inmates. This more stringent commissary spending limitation for IFRP refuses shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;]**

Inmates in IFRP "REFUSE" status will not be permitted to spend more than $25 per month in commissary, excluding purchases of stamps and telephone credits. Staff will not

approve any special purchase item request(s) for inmates in IFRP "REFUSE" status, except for purchases of Kosher/Halal certified shelf-stable entrees for those inmates verified as common fare participants.

**[(7)　The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);**

**(8)　The inmate will not be placed in a community-based program;]**

The Unit Team is to consider the inmate's participation in the IFRP as an important factor when determining Community Corrections Center (CCC) placement.

**[(9)　The inmate will not receive a release gratuity unless approved by the Warden.]**

When a non-participating inmate's need for funds is exceptionally great, the Unit Team may recommend to the Warden that a gratuity be given.

**[(10)　[Reserved]]** (This section is reserved for future rule changes.)

**[(11)　The inmate will not receive an incentive for participation in residential drug treatment programs.]**

Incentives are defined as early release, financial awards, maximum CCC placement consideration, and local institution incentives.  Staff are referred to the Drug Abuse Programs Manual, for limitations, guidelines, and eligibility criteria.

(12)　The inmate's score on "Responsibility" on the Custody Classification form (BP-338), is to be zero, in accordance with the Security Designation and Custody Classification Manual Program Statement.

9.　**SENTRY REQUIREMENTS.**　Unit staff are responsible for entering data into the IFRP SENTRY module accurately pursuant to  the IFRP SENTRY Technical Reference Manual.  After an inmate signs a payment plan, unit staff will forward the original signed copy to the institution's OFM.

The Unit Team must enter an appropriate IFRP assignment into

SENTRY no later than initial classification, and review that assignment at all subsequent regularly scheduled Program Reviews. Unscheduled reviews (when an inmate's IFRP status changes in between Program Reviews) will be documented on the Inmate Activity Record or in memo format and filed in section 1 of the Inmate Central File. The IFRP assignments are:

a. **"UNASSG."** "Unassigned" is entered into SENTRY automatically when an inmate is committed to federal custody. At initial classification, this assignment **must** be converted to another assignment, based on the payment plan the Unit Team developed and the inmate's willingness to participate.

b. **"NO OBLG."** "No Obligation" is entered for an inmate when there is no documented financial obligation. This category is also used for an inmate who has no financial obligation payable while in Bureau custody (e.g., An inmate receives a $50 assessment which the Judge remits or waives, and a $2,000 fine due while on supervised release). "NO OBLG" will also be entered for inmates whose financial obligations have expired due to time limitations.

c. **"PART."** "Participates in Program" is entered for an inmate who agrees to pay, signs an agreement, and is making payments towards his or her financial obligation(s). This assignment will also include inmates who have agreed on their payment plan to make a payment at a future date.

In the case of initial commitment only, 'PART' may be assigned to an inmate pending receipt of the first scheduled payment; however, that payment must be made and confirmed by staff normally within three months, but no later than six months (depending upon the quarterly payment cycle). For all other inmates, the status of "PART" is to be reviewed in accordance with the payment plan or, at a minimum, every six months.

d. **"REFUSE."** "Refuses to Participate in Program" is entered immediately when an inmate verbally refuses to participate in the program. Subsequent to the initial classification, at any time the Unit Team discovers the inmate is not making the agreed-upon payment(s), it is their discretion to place the inmate into IFRP "REFUSE" status and do the following:

! Notify the inmate of the change in IFRP status, once the change is made.

P5380.08
8/15/2005
Page 15

> ! Discuss with the inmate the consequences of being placed in "REFUSE" status, and that consequences will begin immediately.
>
> ! Unit staff are to document that the inmate has been notified and counseled on the change of IFRP status in the Inmate Activity Record as soon as practicable.

Each month, no later than five business days prior to payroll submission, the Institution IFRP Coordinator must produce a roster of inmates in "REFUSE" status and distribute it to:

> ! all Department Heads;
> ! the Associate Warden of Programs; and
> ! the Performance Pay Coordinator.

It is the Performance Pay Coordinator's responsibility to ensure these inmates do not earn above maintenance pay or earn bonus pay or vacation. Additionally, an inmate who is in "REFUSE" status and assigned to work more than one detail will not earn above maintenance pay for his or her total combined earnings from each work assignment.

Once an inmate has been placed in "REFUSE" status, the inmate must demonstrate a willingness to continue participation in the program.

> e.  **"EXEMPT TMP."**  "Temporarily Exempt from Participation" will be entered for an inmate who is unable to participate adequately toward satisfaction of the obligation, ordinarily because of medical or psychological restrictions which prevent the inmate from working. This assignment is at the Unit Team's discretion and may also be used for an inmate who is unable to secure
employment in UNICOR or advance beyond maintenance pay due to conditions beyond the inmate's control (overcrowding, institution need, limited financial resources, special circumstances, etc.).

Additionally, at initial classification, the Unit Team may place newly committed inmates who have limited financial resources in IFRP "EXEMPT TMP" status until their first program review, when unit staff determine that the inmate has limited financial resources. However, in **all** cases, staff

P5380.08
8/15/2005
Page 16

must also consider the inmate's ability to participate by using non-institutional (community) resources prior to placing the inmate in "EXEMPT TMP" status.

The Unit Team must review each inmate's "EXEMPT TMP" status at the inmate's program review. The Unit Manager will review and document the Unit Team's decision on the Program Review Report when the inmate is continued in this assignment.

   f.  **"COMPLT."**  "Completed the Program" will be entered for an inmate who has totally satisfied **all** financial obligations ordered payable during incarceration.

10.  **COURT APPEALS.**  When an inmate's sentence of imprisonment is modified or corrected, absent any statement to the contrary in the new sentencing order, any prior court-ordered financial obligation(s) remain in effect and should be collected pursuant to this Program Statement's provisions. This Program Statement's provisions also apply regardless of whether an inmate is appealing his or her sentence, unless the court orders a "stay of collection" pending the appeal.

However, if there is a change in the modified court order that pertains to court-ordered financial obligations, unit staff will update the inmate's financial plan to ensure that accurate information is entered in the IFRP SENTRY Module.

11.  **WITNESS SECURITY CASES.**  IFRP payments by Witness Security Cases must be processed in accordance with this Program Statement.

12.  **INSTITUTION SUPPLEMENT.**  Each institution will develop an Institution Supplement to:

   a.  Designate an institution IFRP Coordinator;

   b.  Outline UNICOR priority placement;

   c.  Explain any procedures necessary to develop or monitor the institution IFRP program; and

   d.  Specify the date of the month on which the IFRP Refuse roster will be accessed to ensure that non-participating inmates are not receiving performance pay above the maintenance pay level.

A copy of the Institution Supplement is to be forwarded to the respective Regional Correctional Programs Administrator.

/s/
Harley G. Lappin
Director



